## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| MICKEY DALE FUGITT and RHONDA LOU FUGITT | CHAPTER 7 CASE NO. 13-03094-NPO |

| | |
|---|---|
| MICKEY DALE FUGITT and RHONDA LOU FUGITT | PLAINTIFF |
| V. | ADVERSARY PROCEEDING NO. 13-00098-NPO |
| MISSISSIPPI DEPARTMENT OF REVENUE | DEFENDANT |

### BRIEF IN SUPPORT OF
### MOTION TO DISMISS ADVERSARY OR TO ABSTAIN

COMES NOW, Mississippi Department of Revenue, hereinafter MDOR, by and through its undersigned counsel, pursuant to Fed R. Civ. P. 12(b)(1) (made applicable to this action by Fed. R. Bank. R. 7002), and corresponding Mississippi procedural and substantive law, hereby moves this Court (this "Motion to Dismiss") for the entry of an order dismissing the instant Adversary Proceeding filed by Mickey Dale Fugitt and Rhonda Lou Fugitt (Debtors). In support of this Motion to Dismiss, Defendant states as follows:

### I.    Background Facts

**A.    State Tax Assessment**

In April of 2007, a sales tax audit was begun on Debtor, Rhonda Lou Fugitt, for the tax period March 1, 2004 through April 30, 2007.  Attached hereto as Exhibit A is a true and correct copy of the Notice of Audit. The audit reflected additional tax due during the audit period of $30,328.0, penalty of $6,099.00, and interest through September 30, 2007 of $7,461.00 for a total due of $43,888.00.  Based on this audit, on October 10,

1

2007, MDOR issued an Assessment of Sales Tax against this Debtor in the amount of $43,888.00. Attached hereto as Exhibit B is a true and correct copy of this Assessment of Sales Tax. This assessment stated, in part, as follows:

> Pursuant to the provisions of the statute [Section 27-65-37, Mississippi Code of 1972, Amended], payment of the Balance of Assessment due is demanded within (30) days of the date of this assessment, unless a timely appeal is made in writing to the board of Review for a hearing and a correction of the assessment . .
>
> If you are in disagreement with the findings of this audit, you should submit a written request for an appeal to the Review Board within thirty (30) days from the date of this assessment to the address listed below. Your request must include a coy [sic] of the assessment along with a letter specifying in detail the relief requested.

This assessment was mailed to the Debtor via certified mail. The assessment was delivered to the Debtor's home on October 13, 2007, and accepted and signed for on that date. Attached hereto as Exhibit C is a true and correct copy of the return receipt showing this delivery of the assessment. Upon receipt of this assessment, the Debtor neither paid the assessment nor filed a written request for appeal with the Review Board within the thirty (30) day period provided and as indicated on the face of the assessment.

On January 30, 2008, a transfer assessment of sales tax was issued against Debtor Mickey Dale Fugitt, Debtor Rhonda Lou Fugitt's husband, pursuant to Miss. Code Ann. Section 27-65-3(c) in the amount of $47,798.00, which included interest from the date of the initial assessment to the date of the transfer assessment. Attached hereto as Exhibit D is a true and correct copy of the transfer assessment. As with the original assessment, the transfer assessment was also sent by certified mail, and attached hereto as Exhibit E is a copy of the return receipt showing delivery of the assessment on February 6, 2008.

2

Debtor neither paid nor appealed this assessment within the thirty (30) day period provided.

At some point during 2009, the audit staff was contacted on behalf of Debtors by Eddie Beck, CPA, to seek a revision of the tax assessed. Mr. Beck provided the audit staff with checks written by Debtors to two (2) vendors during the audit period that had not been provided during the audit. Based on these additional documents, on April 3, 2009, the auditor reduced the tax amount due from $43,888.00 to $34,108.00.

### B.     Board of Review

By letter dated November 1, 2011 and received by the Board of Review (Board) of the Department on November 3, 2011, Debtors indicated that they did not agree with the audit findings and requested a meeting with the Board to discuss various circumstances surrounding the audit and the outcome of the audit. Attached hereto as Exhibit F is a true and correct copy of this November 1, 2011 letter. By letter dated November 9, 2011, Ashley May, Chairman of the Board returned to the Debtors the November 1, 2011 letter with a form letter that indicated the Debtors did not request the hearing within the time period as specified in the assessment. This typed response was followed by a handwritten notation that the appeal had to be received by November 10, 2011. Attached hereto as Exhibit G is a true and correct copy of the November 9, 2011 letter from Chairman of the Board to the Debtors.

### C.     Board of Tax Appeals

By Notice of Appeal or Objection dated November 16, 2011 and received by the Board of Tax Appeals (BTA) on November 17, 2011, the Debtors appealed to the BTA from the decision of the Board that the attempted appeal to the Board was untimely and

could not be heard by the Board, having been filed approximately four (4) years after the expiration of the thirty (30) day time period for filing an appeal from the October 10, 2007 assessment.

The BTA remanded the appeal to the Board and ordered the Board to conduct a hearing on the matter. Attached hereto as Exhibit H is a true and correct copy of the BTA Order. On June 12, 2012, the Board met to conduct a hearing during which the Debtors presented the argument that the assessment was incorrect and submitted sample documentation in support of this argument. The Debtors responded to questioning from the Board regarding the appeal. The Board then reviewed the facts presented and the law governing appeals of Department actions and determined that it did not have jurisdiction over the matter under the law that existed when the assessment was issued in 2007. Attached hereto as Exhibit I is a true and correct copy of the Order of the Board and the Minutes of the Meeting. The Order contained instructions that the Debtor could appeal to the BTA within sixty (60) days from the date of the order, which was dated July 5, 2011. The Debtor never took any further steps to appeal the order, which would have become final on September 3, 2012.

### D. The Bankruptcy

On August 22, 2011, fourty-eight (48) days after the Board entered its order, the Debtors filed a petition under Chapter 13 of the Bankruptcy Code with this Court, which was assigned case number 12-02731. The Board's order became final on December 22, 2012 because the filing of the Chapter 13 tolled the sixty (60) day time period. The Chapter 13 case was dismissed on December 10, 2012 and the automatic stay ceased pursuant to 11 U.S.C. 362(c)(2)(B) on that same date. Twelve (12) days after the order

was entered dismissing the Chapter 13 and terminating the automatic stay, the order of the Board became final on December 22, 2012.[1] Debtors then filed a second petition under Chapter 7 of the Bankruptcy Code on October 11, 2013, which was assigned case number 13-030904. On November 7, 2013, Debtors instituted this adversary proceeding by filing a Complaint asking this Court to determine the legality and/or the amount of any pre-petition tax owed to MDOR pursuant to Section 505 of the Bankruptcy Code.

## II.  Relief Requested and Basis Thereof

### A.  Dismissal for Lack of Subject Matter Jurisdiction

The Fifth Circuit has recognized that, "[a]lthough Section 505(a)(1) gives the bankruptcy court power to decide the amount or legality of most taxes, this grant of authority is limited by Section 505(a)(2)(A)." *Matter of Trans State Outdoor Advertising Co.,Inc.*, 140 F.3d 618, 620 (5th Cir. App. 1998). 11 U.S.C. Section 505(a) provides in pertinent part:

> (a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.
>
> (2) The court may not so determine-
>
> (A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title…

The Fifth Circuit has held that "the key to resolving the jurisdictional issue is hinged upon the determination of whether the [state taxing authority's] administrative hearing process was an adjudication 'by a judicial or administrative tribunal of competent

---

[1] The United States Supreme Court has held that limitation periods are customarily subject to equitable tolling. *Young v. U.S.*, 535 U.S. 43, 49 (2002).

5

jurisdiction' prior to the filing of the bankruptcy petition." *Id.* "If it was such an adjudication, the bankruptcy court did not have jurisdiction to redetermine [taxpayer's] tax liability under Section 505(a)(2)(A)." *Id.*

The Missisippi Supreme Court has addressed the constitutionality of the appeals process for aggrieved taxpayers in *Akins v. Mississippi Dept. of Revenue,* 70 So.3d 204 (Miss. 2011). The court in *Akins* specifically addresses whether the administrative review procedures adequately provide due process for taxpayers aggrieved by a decision of the MDOR.  *Id*. at 208.

### 1. *Contested Before and Adjudicated by Judicial or Administrative Tribunal of Competent Jurisdiction*

In *Matter of Trans State Outdoor Advertising Co.,Inc.*, 140 F.3d 618, 620 (1998) the Fifth Circuit supported its holding that no jurisdiction existed by explaining that the Texas Adminstrative Code set out the rules governing taxpayer appeals over amounts of taxes assessed by the state taxing agency.  The Fifth Circuit explained that before the decision of the administrative law judge on the appeal is given effect it must be approved by the state taxing agency and a motion for rehearing may be filed within twenty days, otherwise the decision becomes final. *Id.* The Fifth Circuit went on to explain that the taxpayer may then appeal the decision by filing suit in state district court if the taxpayer has first paid the tax in protest. *Id.* The Fifth Circuit agreed with the district court's holding that this type of proceeding was quasi-judicial, did amount to an adjudication by an administrative or judicial tribunal, was adversarial in nature, and was before a tribunal of competent jurisdiction. *Id*.

In *Matter of Teal,* 16 F.3d 619 (1994), the Fifth Circuit also held that a judgment entered by the tax court pursuant to the parties' settlement satisfies section 505(a)(2)(A).

6

The Fifth Circuit explained that the fact that the tax court's judgment was reached by agreement did not undercut the conclusion that the taxes were still contested before and adjudicated by the tax court. *Id.* A similar conclusion was reached by the court in *In re El Tropicano, Inc.*, 128 B.R. 153, (Bankr. W.D. Tex. 1991), which explained the congressional intent behind Section 505. The *In re El Tropicano, Inc.* court noted that Congress appeared to "have used a broad expression in order to encompass the variety of mechanisms for tax adjudication which might be found throughout the nation . . . and the generic language of [505(a)(2)(A)] reflects an apparent congressional intent to defer to the tax adjuciation mechanism of a given state, whatever it might be, so long as it result in an adjudication." *Id.* at 160. The court observed that the "specific inclusion of 'administrative' tribunals in Section 505(a)(2)(A) seems to be a congressional recognition that even adjudication at that level alone is an adjudication which Congress believes the federal courts have no business revisiting." *Id.*

Mississippi has a straightforward process by which a taxpayer aggrieved by an assessment of MDOR can appeal such an assessment. Mississippi Code Ann. Section 27-77-5(3) provides:

> [a]t a hearing before the board of review on a tax assessment . . . the board of review shall try the issues presented, according to law and the facts and within the guidelines established by regulation. The hearing before the board of review shall be informal and no official transcript will be made of the hearing. At the earliest practical date after the hearing, the members of the board of review that heard the appeal shall make a determination on the matter presented and notify the taxpayer of its findings by mailing a copy of its order to the taxpayer.

Mississippi has an equally straightforward process by which a taxpayer can appeal a decision of the Board. Mississippi Code Ann. Section 27-77-5(4)-(6) provides:

7

> [a]ny taxpayer aggrieved by an order of the board of review affirming a tax assessment . . . and who wishes to contest the order shall, within sixty (60) days  from the date of the order of the board of review being contested, file an appeal to the Board of Tax Appeals. . . . At any hearing before the Board of Tax Appeals on an appeal of an order of the board of review affirming a tax assessment, . . . two (2) members of the Board of Tax Appeals shall constitute a quorum. At the hearing, the Board of Tax Appeals shall try the issues presented, according to the law and the facts and pursuant to any guidelines established by regulation. The rules of evidence shall be relaxed at the hearing. . . . After reaching a decision on the issues presented, the Board of Tax Appeals shall enter its order setting forth its findings and decisions on appeal. A copy of the order of the Board of Tax Appeals shall be mailed to the taxpayer and the agency.

In the present case, the Debtors took full advantage of the opportunity to contest their tax assessment before an administrative tribunal of competent jurisdiction.  The Board heard their argument, questioned the Debtors, and accepted supporting documentation from the Debtors.  The Board then reviewed the facts presented and the law in order to make a final determination and issue an order.  The Debtors had sixty (60) days to appeal the Board's order to the BTA.  The Board's order became final on December 22, 2012 because the filing of the Chapter 13 tolled the sixty (60) day time period. Debtors failed to submit any such appeal to the BTA.  The Debtors instead filed for bankruptcy protection and instituted this adversary proceeding requesting the bankruptcy court to redetermine the amount of the state tax assessment.  Since the assessment was already unsuccessfully contested by the Debtors before the Board and resolved pursuant to the order of the Board, the bankruptcy court is without jurisdiction to redetermine the assessment of the state tax.

### 2. *Adjudicated Prior to the Filing of the Bankruptcy Petition*

The Fifth Circuit has discussed this issue of timing and reasoned that "[i]f the tax liability is determined by the state prepetition through an adjudicative system, the

8

bankruptcy court is without jurisdiction to redetermine tax liability." *Matter of Trans State Outdoor Advertising Co.,Inc.*, 140 F.3d 618, 620 (1998) .The court in *Trans State* explained that the taxpayer "could have filed for bankruptcy before the decision of the Comptroller became final and had his tax liability determined by the bankruptcy court," but the taxpayer failed to do so; thus no jurisdiction for the bankruptcy court existed. *Id.* at 621-22. In support of its holding the Fifth Circuit noted that other courts facing similar circumstances held that the bankruptcy court was without jurisdiction to determine tax liability once the matter had been adjudicated by a quasi-judicial tribunal. *Id.* at 622. *See Arkansas Corp. Commission v. Thompson,* 313 U.S. 132 (1941) (holding that Arkansas Corporation Commission's determination of tax liability which was not appealed in state court became a final decision and could not be relitigated in bankruptcy court as the Commission had full power to summon witnesses and hear evidence and state statute provided the right to appeal in state court); *In re El Tropicano, Inc.,* 128 B.R. 153 (Bankr.W.D.Tex.1991) (holding that Bexar County Appraisal District was an administrative or judicial tribunal of competent jurisdiction as the taxpayer had the opportunity to appear, offer evidence, and appeal the Appraisal District's decision; thus the bankruptcy court did not have jurisdiction over tax liability redetermination under Section 505(a)(2)(A)).

      In the present case, the Debtors unsuccessfully appealed the assessment of state taxes before the Board prior to filing their bankruptcy. The Debtors did not file for bankruptcy protection until after the Board heard the Debtors' argument, reviewed the facts presented and governing law, and issued a final order on the appeal. Since the Debtors chose to contest the assessment and have the assessment adjudicated by the

Board prior to the filing of their bankruptcy petition, the bankruptcy court is without jurisdiction to redetermine the state tax assessment.

### 3. *Constitutionality of Mississippi Administrative Review Procedures*

In *Akins*, the taxpayer argued that administrative review by the Board and the BTA are insufficient to constitute predeprivation process and that he should be entitled to judicial review. *Akins v. Mississippi Dept. of Revenue,* 70 So.3d 204, 208 (Miss. 2011). "Generally, due process requires notice and a meaningful opportunity to be heard." *Id.* "In the context of tax assessments and collections, a meaningful opportunity to be heard requires that a taxpayer be provided with either a predeprivation process or postdeprivation process to contest the validity of the imposed tax." *Id.* The Mississippi Supreme Court disagreed with the taxpayer and held that the taxpayer was provided with sufficient predeprivation process (i.e., two hearings through administrative review) to contest the validity of the tax, and consequently the taxpayer was afforded due process. *Id.* 208-09.  In the present case, the Debtors were provided with two hearings, one before the Board and another before the BTA.  Therefore, in the exactly the same manner as the taxpayer in *Akins*, the Debtors here were provided with predeprivation process sufficient to afford them due process.

### B.     Abstention

Even if this Court determines it does have subject matter jurisdiction, it still must determine whether it is appropriate to exercise such jurisdiction and hear this proceeding or to abstain from doing so.  Section 505(a)(1) allows but does not require the Bankruptcy Court to determine a debtor's tax liability.  The Fifth Circuit has explained

that the ability of the bankruptcy court to "abstain is premised on Congress' use of the word '*may*' in [Section] 505." *In re Luongo*, 259 F.3d 323 (5th Cir. App. 2001).

In making a determination as to whether to abstain under Section 505, the Fifth Circuit has explained that courts frequently look to factors including:

(1) the complexity of the tax issues to be decided;
(2) the need to administer the bankruptcy case in an orderly and efficient manner;
(3) the burden on the bankruptcy court's docket;
(4) the length of time required for trial and decision;
(5) the asset and liability structure of the debtor; and
(6) the prejudice to the taxing authority.

*Id*. at 330.

In making a determination as to whether to abstain from hearing a Section 505 action, the Fifth Circuit also noted that:

[s]everal courts have also taken into consideration what they identify as the two-fold purpose of [Section] 505: (1) affording a forum for the ready determination of the legality or amount of tax claims, which determination, if left to other proceedings, might delay conclusion of the administration of the bankruptcy estate, and (2) providing an opportunity for the trustee, on behalf of the creditor, to contest the validity and amount of a tax claim, when the debtor has been unwilling or unable to do so.

*Id.* The Fifth Circuit explained that when neither of these two purposes would be served by a bankruptcy court's determination of a Chapter 7 debtor's tax liability, abstention is warranted. *Id*.

In *In re Cain*, 142 B.R. 785 (Bankr.W.D.Tex. 1992), a Chapter 7 debtor in a no asset case filed a complaint to determine tax liability alleging tax assessments were illegal and erroneous. The *In re Cain* court held that discretionary abstention was appropriate in view of the debtor's failure to use administrative procedures to contest the taxes. *Id*. The court reasoned that unless it abstained under such circumstances, "every

11

taxpayer could ignore [taxing authority statutory] requirements for disputing tax liability, and then after the fact attempt to obtain a judicial determination in bankruptcy court." *Id.* at 789.

In *In re Onondaga Plaza Maintenance Co., Inc.,* 206 B.R. 653, 656 (Bankr. N.D. N.Y. 1997), the court held that the Chapter 11 debtor was not entitled to a bankruptcy court review of a tax assessment simply because the debtor's petition to challenge the tax was dismissed by the state court as untimely. The court reasoned that "congress never intended to create a second tax adjudication system in enacting Code [Section] 505." *Id*. The factor the court determined warranted abstention dealt with the asset and liability structure of the debtor. *Id.* The debtor only had one creditor, the taxing authority, and no unsecured creditors awaiting distribution by the debtor. *Id.* at 657. The court noted that under similar circumstances, courts have generally abstained from reviewing tax disputes citing *In re Shapiro*, 188 B.R. 140, 144 (Bankr.E.D.Pa.1995) (holding in no-asset Chapter 7 case, when rights of creditors and administration of case will not be affected, there is normally little justification to fix amount of debtor's tax debt unless rights of creditors are involved and interest of justice so requires). *Id*. The court pointed out that the debtor's only reason for filing its petition was to stay the tax foreclosure sale of the property by the local taxing agency and the debtor had already been actively involved in the assessment review process. *Id*. The court felt that adjudicating the assessments would not expedite any distribution to unsecured creditors, since there were none, and would not advance the purpose for which Section 505 was enacted. *Id*

In *In Re Swan*, 152 B.R. 28 (Bankr.W.D.N.Y. 1992), the debtor's only creditors were a mortgage holder on her residence and taxing authorities. The bankruptcy court

12

declined to exercise jurisdiction under Section 505, pointing out that the debtor had exercised her rights in challenging the tax claims but had failed to file the documents necessary to appeal the decision of the taxing bureau in a timely fashion. *Id*. The court noted that what the debtor was requesting was "nothing more than an attempt to gain a second bite of the apple," which would only benefit her and not her creditors; a result never intended under Section 505. *Id*.

In *In re Millsaps*, 133 B.R. 547 (Bank.M.D.Fla.1991), a Chapter 7 debtor in a no asset case filed a Section 505 action. The bankruptcy court held that interests of justice warranted discretionary abstention, reasoning that the debate in the House of Representatives leading to the passage of this section clearly shows that, when there is no need for a determination of the amount of tax for estate administration purposes, Congress did not intend or foresee that the bankruptcy court would be the forum for this type of litigation. *Id.* at 556.

In *In re Johnson*, 484 B.R. 698, 719 (Bankr.S.D.Ohio 2012), the bankruptcy court abstained from making a Section 505 determination in a no asset Chapter 7 case based on a failure of both recognized purposes of Section 505. The court held that neither of the two purposes would be served by maintaining the adversary proceeding because there were no assets to administer or which might be dissipated and that the weight of authority shows that abstention is generally appropriate in no-asset chapter 7 cases where no bankruptcy purpose would be served. *Id*. at 719.

The court in *In re Kohl*, 397 B.R. 840, 845-46 (Bank.N.D.Ohio 2008), abstained from making a Section 505 determination due to the fact that neither of the two purposes of Section 505 would be carried out if it made such a determination. The court explained

that this was the case because the debtor's estate had no assets for distribution and abstention is especially appropriate in no asset cases. *Id.* at 46. The court further explained that no assets would be made available for distribution if the debtors prevailed on their complaint and no assets would be available to satisfy the debt owed to defendant should it prevail. *Id.* The court concluded that the debtors would be the only possible beneficiaries if their action under Section 505 was to proceed and 505 does not function as an alternative forum for tax litigation when such litigation would have no impact on the administration of the bankruptcy case. *Id.* The court explained that

> the intended beneficiaries of the aims served by 505 are the general body of unsecured creditors – that is, the estate – not the debtor. . . . In this way debtors proceeding under chapter 7, having surrendered their assets to the estate for administration, are not normally entitled to maintain actions under [Section] 505(a)(1) to determine their tax liability, particularly where there exists no assets for distribution.

*Id.*

The Debtors in the present case have the asset and liability structure that generally warrants abstention. This is a no-asset Chapter 7 in which the Debtors' unsecured creditors other than taxing authorities are *de minimus*. The Debtors only have one secured creditor, the mortgagor on the Debtors' home. Thus, there are no assets from which the creditors would benefit from distributions. The only beneficiary of the Debtors request would be the Debtor and such a benefit would come at a great detriment to the MDOR.

In the present case, the Debtors were unsuccessful in appealing their tax assessment prior to the filing of the bankruptcy. Instead of appealing within the time allowed by statute, the Debtors waited until such time had expired to appeal and the Board ultimately issued an order that it was without jurisdiction to rule on the appeal and upholding the assessment. The Board's order became final on December 22, 2012. The

Debtors now are seeking a second tax adjudication by the bankruptcy court which would serve no legitimate bankruptcy purpose and be contrary to the purposed behind Section 505.  Therefore, abstention by the bankruptcy court is appropriate in such a situation.

WHEREFORE, the Defendant respectfully requests the Court to enter an Order granting this Motion to Dismiss for lack of subject matter jurisdiction and dismissing this instant Adversary Proceeding in its entirety. However, even if this Court finds that it has subject matter jurisdiction, Defendant respectfully requests the Court to enter an Order granting this Motion to Dismiss based upon the Court abstaining from hearing this adversary proceeding. Defendant also requests such other, further and different relief as this Court deems just and proper under the circumstances.

Dated this the 3rd day of March, 2014.

                RESPECTFULLY SUBMITTED,
                MISSISSIPPI DEPARTMENT OF REVENUE

BY:   /s/ *Kenitta Franklin Toole*
        Kenitta Franklin Toole, MSB #101157
        Senior Staff Attorney
        Post Office Box 22828
        Jackson, MS 39225
        Telephone: (601) 923-7412
        Facsimile: (601) 923-7423