

SO ORDERED,

Judge Neil P. Olack
United States Bankruptcy Judge
Date Signed: August 8, 2014

The Order of the Court is set forth below. The docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

MICKEY DALE FUGITT AND                                    CASE NO. 13-03094-NPO
RHONDA LOU FUGITT,

    DEBTORS.                                                        CHAPTER 7

MICKEY DALE FUGITT AND
RHONDA LOU FUGITT                                               PLAINTIFFS

VS.                                                    ADV. PROC. NO. 13-00098-NPO

MISSISSIPPI DEPARTMENT OF REVENUE                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**
**(1) DENYING DEFENDANT MISSISSIPPI DEPARTMENT**
**OF REVENUE'S AMENDED MOTION TO DISMISS; (2) DENYING**
**MOTION TO STRIKE; AND (3) GRANTING THE MISSISSIPPI DEPARTMENT**
**OF REVENUE'S MOTION FOR LEAVE TO AMEND MOTION FOR SUMMARY**
**JUDGMENT OR IN THE ALTERNATIVE WAIVE REQUIREMENT OF LOCAL RULE**

There came on for hearing on June 11, 2014 (the "Dismissal Hearing") the Defendant

Mississippi Department of Revenue's Amended Motion to Dismiss (the "Motion to Dismiss")

(Adv. Dkt. 21)[1] filed by the Mississippi Department of Revenue (the "MDOR"); the Brief in Support of the Motion to Dismiss Adversary or to Abstain (the "MDOR Brief") (Adv. Dkt. 21-1) filed by the MDOR; the Plaintiff's Memorandum in Opposition to Defendant's Amended Motion to Dismiss (the "Debtors Brief") (Adv. Dkt. 26) filed by the debtors, Mickey Dale Fugitt ("Mickey Fugitt") and Rhonda Lou Fugitt ("Rhonda Fugitt") (Together, Mickey Fugitt and Rhonda Fugitt are referred to as the "Debtors"); and the Reply to Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss (the "MDOR Reply Brief") (Adv. Dkt. 27) filed by the MDOR in the Adversary.  At the Dismissal Hearing, James G. McGee, Jr. of the McGee Tax Law firm represented the Debtors, and Kenitta Franklin Toole of the MDOR represented the MDOR.

During the pendency of the Motion to Dismiss, the MDOR filed the Brief in Support of Motion for Summary Judgment (the "Summary Judgment Brief") (Adv. Dkt. 28).  With respect to the Summary Judgment Brief, there came on for hearing on July 15, 2014 (the "Summary Judgment Hearing") the Motion to Strike (the "Motion to Strike") (Adv. Dkt. 38) filed by the Debtors; the Response to Motion to Strike (Adv. Dkt. 41) filed by the MDOR; the Motion for Leave to Amend Motion for Summary Judgment or in the Alternative Waive Requirement of Local Rule (the "Motion to Amend") (Adv. Dkt. 42) filed by MDOR; and the Plaintiffs' Response to Defendant's Motion for Leave to Amend (Adv. Dkt. 45) filed by the Debtors.  At the Summary Judgment Hearing, Matthew E. Rutherford, Jr. of the McGee Tax Law firm represented the Debtors, and Kenitta Franklin Toole of the MDOR represented the MDOR.

---

[1] Citations to the record are as follows:  (1) citations to docket entries in the above-referenced adversary proceeding (the "Adversary") are cited as "(Adv. Dkt. _____)"; (2) citations to docket entries in the main bankruptcy case, Case No. 13-03094-NPO, are cited as "(Bankr. Dkt. _____)"; and (3) citations to docket entries in other cases are cited by the case number followed by the docket number.

After considering the arguments of counsel at the Summary Judgment Hearing, the Court announced from the bench that it would consider the Motion to Strike and Motion to Amend after it had disposed of the Motion to Dismiss.

Turning first to the Motion to Dismiss, the MDOR asks the Court to dismiss the Adversary, in its entirety, for lack of subject matter jurisdiction. Assuming that subject matter jurisdiction exists, the MDOR asks the Court to abstain from hearing the Adversary. The Court, having considered the pleadings and arguments of counsel, finds that the Motion to Dismiss is not well taken and should be denied for the reasons set forth below.

Next, the Court turns to the Motion to Strike in which the Debtors ask the Court to strike the Summary Judgment Brief filed by MDOR on the ground that it was unaccompanied by a separate summary judgment motion. The Court finds that the Motion to Strike is not well taken and should be denied as explained below. Finally, as to the Motion to Amend, the MDOR seeks permission from the Court to amend the Summary Judgment Brief to cure the deficiencies pointed out in the Motion to Strike. The Court finds that the Motion to Amend is well taken and should be granted for the reasons stated in the following discussion. In support of its decisions, the following findings of fact and conclusions of law are made pursuant to Rules 7052 and 9019 of the Federal Rules of Bankruptcy Procedure.

## Jurisdiction

The Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Moreover, 11 U.S.C. § 505(a) confers jurisdiction to determine the tax disputes at issue, as discussed at length below. Notices of the Motion to Dismiss, Motion to Strike, and Motion to Amend were proper under the circumstances.

## Facts

The facts below are undisputed unless otherwise noted.

1.      In a letter dated April 2, 2007, the MDOR notified Rhonda Fugitt that it had begun an examination of her returns to verify payment of sales taxes for the period from March 1, 2004 through the present by "Rhonda Fugitt d/b/a/ Scooters Trademart."[2]  (MDOR Ex. A, Adv. Dkt. 21-2).  Scooters Trademart is a convenience store that sells goods and provides cash-checking services.[3]

**Sales Tax Assessment**

2.      As a result of that audit, the MDOR determined that Rhonda Fugitt owed additional sales taxes and issued the Assessment of Sales Taxes (the "Assessment") (MDOR Ex. B, Adv. Dkt. 21-2) against her on October 10, 2007, of $43,888.00, consisting of unpaid sales taxes of $30,328.00 and interest and/or damages of $13,560.00 for the tax period March 1, 2004 through April 30, 2007.[4]

The Assessment contained the following language regarding the appellate process:

Pursuant to the provisions of the statute, payment of the Balance of Assessment due is demanded within thirty (30) days of the date of this assessment, unless a timely appeal is made in writing to the Board of Review for a hearing and a correction of the assessment . . . . If neither payment as demanded nor request for hearing is made within this thirty (30) day period, a tax lien for this tax liability will be recorded against you.

_____

[2] For the sake of brevity and because it makes no difference to the outcome, the Court refers to both Rhonda Fugitt and Scooters Trademart as Rhonda Fugitt.

[3] The taxation of sales in Mississippi is governed by the Mississippi Sales Tax Law, MISS. CODE ANN. §§ 27-65-1 to 27-65-11, which provides in pertinent part that "every person engaging or continuing within this state in the business of selling any tangible personal property whatsoever there is hereby levied, assessed and shall be collected a tax equal to seven percent (7%) of the gross proceeds of the retail sales of the business."  MISS. CODE ANN. § 27-65-17(1)(a).

[4] $43,888.00 = $30,328.00 + $13,560.00.  (MDOR Ex. B, Adv. Dkt. 21-2).

(*Id.*).  The MDOR sent Rhonda Fugitt a notice of the Assessment (MDOR Ex. C, Adv. Dkt. 21-2) by certified mail, return receipt requested.  The return receipt was signed by "Jessica Fugitt" on October 13, 2007.

3.      Rhonda Fugitt neither paid nor appealed the Assessment to the MDOR's Review Board (the "Review Board").  At the time of the Assessment, appellate review of the MDOR's decision was governed by Mississippi's statutory scheme for administrative appeals, MISS. CODE ANN. §§ 27-77-1 to 27-77-19, which then allowed only thirty (30) days to protest sales taxes before the Review Board.  *See* MISS. CODE ANN. § 27-77-5.  Thus, according to the MDOR, the Assessment became final on November 9, 2007[5] under the following provision of Mississippi law:

> Failure to timely file a written appeal . . . within the thirty (30) day period shall make the order of the board of review final and not subject to further review by the Board of Tax Appeals or a court, other than as to the issue of whether a written appeal from the order of the board of review was timely filed.

MISS. CODE ANN. § 27-77-5(5).

4.      On January 30, 2008, a transfer of the Assessment ("Transfer Assessment") (MDOR Ex. D, Adv. Dkt. 21-2) was issued against Rhonda Fugitt's spouse, Mickey Fugitt,[6] in the amount of $44,798.00, including interest accruing through January 30, 2008 (the date of the Transfer Assessment).  The MDOR sent Mickey Fugitt the Transfer Assessment (MDOR Ex. E,

---

[5] The MDOR asserts in the Reply Brief that the Assessment became final on November 10, 2007, but thirty (30) days from the date of the Assessment is actually November 9, 2007.  (MDOR Reply Br. at 2).

[6] The Mississippi Sales Tax Law defines "person" to include a spouse "where joint benefits are derived from the operation of a business taxed hereunder."  MISS. CODE ANN. § 27-65-3(c).

Adv. Dkt. 21-2) by certified mail, return receipt requested.  The return receipt was signed by "Mickey Fugitt" on February 6, 2008.

 5. Although the precise date is not reflected in the record, sometime in 2009 the Debtors retained the services of a certified public accountant, Eddie Beck ("Beck"),[7] to represent them in their sales tax dispute.  After Beck provided the MDOR with two (2) checks written by the Debtors during the audit period, the MDOR reduced the tax amount due from the initial Assessment of $43,888.00 to $34,108.00 on April 3, 2009 (MDOR Ex. I at 2, Adv. Dkt. 21-2).

**Review Board**

 6. About four (4) years after the Assessment, on November 1, 2011, Rhonda Fugitt sent the Review Board a letter (the "Appeal Letter") (MDOR Ex. F, Adv. Dkt. 21-2) stating that she did not agree with the Assessment and requesting a meeting to discuss the outcome of the audit.[8]  The chairman of the Review Board sent a form letter dated November 9, 2011 (the "Review Board Letter") (MDOR Ex. G, Adv. Dkt. 21-2) to Rhonda Fugitt, notifying her that she "did not request the hearing within the time period as specified on the assessment."  Below the typed language appears this handwritten note: "The appeal had to be received by 11/10/2007."  As previously noted, the applicable limitations period in MISS. CODE ANN. § 27-77-5(5) required the Debtors to appeal the Assessment within thirty (30) days of its issuance.

---

 [7] Beck passed away in June, 2010.

 [8] MISS. CODE ANN. § 27-77-5(1) ("[A]ny taxpayer aggrieved by an assessment of the tax . . . shall . . . file an appeal in writing with the board of review requesting a hearing and correction of the contested action specifying in detail the relief requested and any other information that might be required by regulation.").

**BTA**

7.      On November 16, 2011, the Debtors sent a Notice of Appeal or Objection to the Board of Tax Appeals of the State of Mississippi (the "BTA") appealing the Review Board Letter that dismissed their appeal as untimely.[9]  (MDOR Br. at 4).

8.      In response to the appeal, the MDOR asked the BTA to dismiss the appeal for lack of jurisdiction.  On February 15, 2012, the BTA held a hearing (the "BTA Hearing") at MDOR's request.  The Debtors and the accountant whom they retained to replace Beck appeared at the BTA Hearing.  At the end of the BTA Hearing, the BTA took the matter under advisement.

9.      On April 18, 2012, the BTA issued an order (the "BTA Order") (MDOR Ex. H, Adv. Dkt. 21-2) denying the MDOR's request to dismiss the appeal and remanding the matter to the Review Board for a hearing.  The BTA Order provided in substance:

> [T]he appeal . . . is hereby remanded to the Board of Review for a hearing and that, at the earliest practical date after the hearing, the Board of Review shall notify the taxpayer of its findings by mailing a copy of its order to the taxpayer.

(*Id.*).

**Review Board on Remand**

10.      On June 12, 2012, the Review Board held a hearing (the "Review Board Hearing") during which, according to the MDOR, "[t]he [Review] Board heard their argument, questioned the Debtors, and accepted supporting documentation from the Debtors."  (MDOR Br. at 11).

11.      After the Review Board Hearing, the Review Board issued the Order of the Board of Review, Department of Revenue, Jackson, Mississippi (the "Review Board Order") (MDOR Ex. I, Adv. Dkt. 21-2) holding that it "does not have jurisdiction to consider the taxpayer's

---

[9] MISS. CODE ANN. § 27-77-5(4) ("[A]ny taxpayer aggrieved by an order of the board of review affirming a tax assessment . . . shall . . . file an appeal to the Board of Tax Appeals.").

untimely appeal" and dismissing the appeal for a second time.  The Review Board Order dated July 5, 2012, informed Rhonda Fugitt that she could appeal the decision to the BTA within sixty (60) days.[10]  (*Id.*).

12.    All hearings before the Review Board are "informal and no official transcript [is] made of the hearing."  MISS. CODE ANN.  § 27-77-5(3).  Rather, the official record of the Review Board Hearing consists of the minutes and orders of the Review Board.  MISS. ADMIN. CODE § 35-I-1.01(12)(d).

13.    In the Minutes of the Called Meeting of the Board of Review Held Tuesday, June 12, 2012 (the "Board Minutes") (MDOR Ex. I, Adv. Dkt. 21-2), the Review Board explained its decision—that without jurisdiction, it did not have "the power to amend the assessment against the taxpayer."  (*Id.*).  The Review Board nevertheless opined that even if it were able "to consider the taxpayer's argument against the correctness of the assessment, it is not clear . . . that any appreciable change would have been made."  (*Id.*).  It reached that opinion after noting that Rhonda Fugitt's purchases exceeded her reported sales and that Rhonda Fugitt stated during the Review Board Hearing she had a problem with employee theft, which should have reduced the taxable income found in the audit.  (*Id.*).

14.    The Debtors did not appeal the Review Board Order to the BTA.

**2012 & 2013 Bankruptcy Cases**

15.    Almost two (2) months after the Review Board Order was rendered, the Debtors filed a chapter 13 petition for relief in Case No. 12-02731-NPO (the "2012 Bankruptcy Case") on August 22, 2012.  The 2012 Bankruptcy Case was dismissed for nonpayment on December

---

[10] By this date, MISS. CODE ANN. § 27-77-5 had been amended to extend the appeal time from thirty (30) days to sixty (60) days.

10, 2012.  (Case No. 12-02731-NPO, Bankr. Dkt. 33).  According to the MDOR, the Review Board Order became final on December 22, 2012.[11]

16.    On October 11, 2013, the Debtors filed a chapter 7 petition for relief (the "Petition").  (Bankr. Dkt. 1).

**Adversary**

17.    On November 7, 2013, the Debtors filed the Complaint of Mickey Dale Fugitt and Rhonda Lou Fugitt Initiating Adversary Proceeding (the "Complaint") (Adv. Dkt. 1) against the MDOR.  In the Complaint, the Debtors ask the Court to determine the validity and amount of sales taxes they owe the MDOR and the dischargeability of that amount.

18.    In the Motion to Dismiss, the MDOR seeks dismissal of the Adversary in its entirety for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)"),[12] as made applicable to adversary proceedings by Rule 7012 of the Federal Rules of Bankruptcy Procedure.  Assuming that subject matter jurisdiction exists, the MDOR further asks the Court to abstain from hearing the tax dispute.

19.    On the last day of the dispositive motion deadline on June 2, 2014, the MDOR electronically filed the Summary Judgment Brief but did not file a supporting motion or all of the exhibits.  (Scheduling Order, Adv. Dkt. 5).  The next day, the MDOR filed three (3) additional exhibits but still did not file a separate motion for summary judgment.  The Debtors filed a Motion to Strike the Summary Judgment Brief because of the MDOR's failure to file a separate

_____

[11] The MDOR alleges that the BTA Order would have become final on September 3, 2012 but for the filing of the chapter 13 petition for relief, which tolled the sixty (60)-day appeal time until December 22, 2012. (MDOR Br. at 7)

[12] Regarding the timeliness of a motion to dismiss, Rule 7012(h)(3) provides that "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."  FED. R. BANKR. P. 7012(h)(3).

summary judgment motion. To address the deficiency, the MDOR filed the Motion to Amend with an attached proposed motion for summary judgment (the "Proposed Summary Judgment Motion") (Adv. Dkt. 42-2).

## Discussion

### A.  Motion to Dismiss

The Motion to Dismiss consists of two (2) motions: a motion seeking dismissal on the ground the Court lacks subject matter jurisdiction under 11 U.S.C. § 505(a)[13] to determine the sales tax liability of the Debtors and a motion seeking abstention from the tax dispute. The Court considers the jurisdictional challenge first. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (recognizing that such a requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice).

Because the Debtors adopt a standard for dismissal that does not apply to the present tax dispute in the Debtors Brief, the Court begins by addressing the standard that guides its jurisdictional analysis. The Debtors correctly contend that "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006,1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The Debtors further cite *Home Builders* for the assertion that "[a] motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *See Home Builders*, 143 F.3d at 1010. For that proposition, *Home Builders* cited *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992), which itself cited the pleading standard the U.S. Supreme Court appeared to have

---

[13] From this point forward, all section references are to the U.S. Bankruptcy Code found at title 11 of the United States Code unless otherwise noted.

adopted in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), for the dismissal of a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), not under Rule 12(b)(1). The standards for dismissal under Rule 12(b)(1) and Rule 12(b)(6) differ greatly. Here, the basis for the Motion to Dismiss is the Court's purported lack of jurisdiction under Rule 12(b)(1), which *Conley* did not address. Moreover, after *Home Builders*, the U.S. Supreme Court issued two opinions clarifying the pleading standard set forth in *Conley* under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Having rejected the standard urged by the Debtors, the Court applies the proper standard to the arguments raised by MDOR. A motion to dismiss under Rule 12(b)(1) is characterized as either facial or factual. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). A facial attack is based solely upon the complaint itself, whereas "[a] 'factual attack' . . . challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (citation omitted). "The district court consequently has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

Here, the MDOR presented nine (9) exhibits at the Dismissal Hearing for the Court's consideration.[14] Thus, the Court considers the Motion to Dismiss to be a "factual attack" because it is not limited to the facts alleged in the Complaint. The Fifth Circuit Court of Appeals has recognized that when confronted with a "factual challenge" to a court's jurisdiction, it "is

---

[14] The MDOR's exhibits from the Dismissal Hearing are cited in this Opinion as "(MDOR Ex. ____)".

free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (citation omitted).

The burden of proof is on the Debtors who assert subject matter jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Finally, the Court notes that it has jurisdiction to consider its own jurisdiction.  *See Henry v. United States*, 277 F. App'x 429, 434 (5th Cir. 2008).  Having addressed the proper standard, the Court turns now to the Debtors' allegations in the Complaint and the exhibits introduced at the Hearing to determine whether subject matter jurisdiction exists.

### 1.    Section 505

The issue presented here concerns the scope of the protection afforded debtors under § 505(a)(1).  Bankruptcy courts have a "broad grant of jurisdiction in § 505(a)(1)" which permit them to determine the amount and legality of certain taxes. *Internal Revenue Serv. v. Luongo (In re Luongo)*, 259 F.3d 323, 328 (5th Cir. 2001).  This jurisdiction has been "universally recognized" among bankruptcy courts and "absent the express statutory limitations in § 505(a)(2)(A) and (B) . . . [jurisdiction is] limited only by their discretion to abstain." *Id.* at 329 (citing *In re Hunt*, 95 B.R. 442, 445 (Bankr. N.D. Tex. 1989)).  In pertinent part, § 505(a) provides:

> (1)    Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

> (2)    The court may not so determine—

> (A)    the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial

or administrative tribunal of competent jurisdiction before the commencement of the case under this title.

11 U.S.C. § 505(a).

The limitation in § 505(a)(2)(A) incorporates *res judicata* principles. *Res judicata*, or claim preclusion, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). Application of the doctrine of *res judicata* depends upon satisfaction of the following four-part test: (1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases. *Eubanks v. F.D.I.C.*, 977 F.2d 166, 169 (5th Cir. 1992) (citations omitted). The adjudication requirement in § 505(a)(2)(A) is similar to, if not the same as, the third element for establishing *res judicata*.

### a. "Adjudicated by an Administrative Tribunal"

The jurisdictional issue here hinges upon whether the Debtors' tax liability actually was adjudicated before the filing of the Petition. *Tex. Comptroller of Pub. Accounts v. Trans State Outdoor Adver. Co. (In re Trans State Outdoor Adver. Co.)*, 140 F.3d 618, 620 (5th Cir. 1998). To reiterate, the Debtors' challenge is not whether the administrative hearing process provided under Mississippi law satisfies the adjudication requirement under § 505 but whether the tax dispute currently before the Court actually was adjudicated as contemplated by that law.[15] The MDOR contends that "the [A]ssessment was already unsuccessfully contested by the Debtors before the [Review] Board and resolved pursuant to the order of the [Review] Board." (MDOR

---

[15] The MDOR points out that in *Akins v. MDOR*, 70 So. 3d 204, 208 (Miss. 2011), the Mississippi Supreme Court ruled that the administrative review process granted taxpayers under MISS. CODE ANN. § 27-77-5 and § 27-77-7 satisfied the due process requirements of the Fourteenth Amendment to the U.S. Constitution. The issue here, however, is not the constitutionality of Mississippi's appellate review process.

Br. at 11).   The Debtors, to the contrary, contend that the time to appeal expired before the Assessment was afforded any administrative review and, thus, was never adjudicated.

In support of its position that there has been a prior adjudication of the Debtors' tax liability within the meaning of § 505(a), the MDOR cites three (3) cases:   *Trans State,* 140 F.3d at 618; *Internal Revenue Serv. v. Teal (*In re Teal*)*, 16 F.3d 619 (5th Cir. 1994); and *El Tropicano v. Garza (In re El Tropicano),* 128 B.R. 153 (Bankr. W.D. Tex. 1991).   The Court finds that none of these cases is analogous to the facts at hand because they all share one important fact that is not present here:   a judgment was entered on a previously contested or settled tax claim.

### (1.)   *Trans State*

In *Trans State*, the Texas Comptroller of Public Accounts (the "Comptroller"), assessed a deficiency against the debtor for unpaid sales and use taxes.   *Trans State*, 140 F.3d at 618.   The debtor requested a redetermination hearing on the assessment because some of the invoices the Comptroller allegedly included in the audit reflected unauthorized purchases that were not the debtor's responsibility.   After considering the arguments of the debtor and the Tax Division of the Comptroller, the administrative law judge (the "ALJ") entered a Proposed Comptroller's Decision in which he recommended that the audit stand without change.   The ALJ based his decision on the debtor's failure to produce documents supporting its position that some of the invoices did not belong in the audit.   Notwithstanding the debtor's objection to the Proposed Comptroller's Decision, the Comptroller issued the Order of the Comptroller adopting the decision of the ALJ.   The debtor failed to appeal, and the Order of the Comptroller became final twenty (20) days after its issuance.

The Comptroller filed a claim for unpaid use and sales taxes in the chapter 11 bankruptcy case commenced by the debtor.  The debtor objected to the allowance of the Comptroller's tax claim.  After a hearing, the bankruptcy court found that the debtor did not owe any taxes to the Comptroller, who then appealed the bankruptcy court's ruling to the district court.  On appeal, the district court reversed, holding that the bankruptcy court lacked subject matter jurisdiction under § 505(a)(2)(A) to redetermine the debtor's tax liability.  The debtor appealed the district court's decision to the Fifth Circuit.

The issue before the Fifth Circuit in *Trans State* was whether the administrative hearing process was an adjudication "by a judicial or administrative tribunal of competent jurisdiction" prior to the filing of the bankruptcy petition.  The debtor argued that the Order of the Comptroller was nothing more than an assessment, unworthy of the status of a formal adjudication within the meaning of § 505(a)(2)(A).  The Fifth Circuit rejected the debtor's argument, agreeing with the district court's description of the administrative proceeding as quasi-judicial and adversarial because the debtor was afforded the opportunity to:  (1) subpoena and call witnesses at a contested hearing where the rules of evidence applied; (2) appeal the Comptroller's decision in state court for *de novo* review after paying the tax under protest; and (3) file bankruptcy before the Comptroller's decision became final.

The facts of *Trans State* differ from those here because neither the Review Board nor the BTA ever actually adjudicated the merits of the Debtors' tax liability.  The Review Board Order provides:  "[T]he Board of Review does not have jurisdiction to consider the taxpayer's untimely appeal of Sales Taxes assessed against her for the period of March 1, 2004, through April 30, 2007, and, therefore, the appeal is dismissed."  (Bd. Rev. Or. at 1).  Tellingly, the Board Minutes explained that "[b]ased upon the Board's conclusion that it has no jurisdiction over the

taxpayer's appeal, the Board does not have the power to amend the assessment against the taxpayer." (Bd. Minutes at 2). Clearly, the Review Board never intended to adjudicate the tax liability of the Debtors. Although the Board Minutes touched upon the merits of the tax dispute by doubting whether the Review Board would have made any "appreciable change" to the Assessment if it had jurisdiction, it made this pronouncement without an adjudication. Moreover, the Board Minutes indicated that the Review Board would have made some change to the Assessment, albeit not an "appreciable" one.

### (2.)   *Teal*

In *Teal*, the debtor sought and obtained a refund of income taxes from the Internal Revenue Service (the "I.R.S.") but was notified afterwards that he was liable for its repayment. *Teal*, 16 F.3d at 620. The debtor contested that decision by filing a petition in U.S. Tax Court. After the debtor and the I.R.S. reached a settlement, the U.S. Tax Court entered a judgment reflecting the terms of their agreement.

The debtor then initiated a chapter 7 bankruptcy case and filed an adversary complaint against the I.R.S. seeking a redetermination of his tax liability. The bankruptcy court declined to do so because it lacked jurisdiction under § 505(a)(2)(A). On appeal by the debtor, the district court reversed the bankruptcy court's decision. The I.R.S. then appealed the district court's ruling on the ground the bankruptcy court lacked jurisdiction under principles of *res judicata* or claim preclusion. The Fifth Circuit agreed with the bankruptcy court and the I.R.S.

In rejecting the district court's analysis, the Fifth Circuit found that it made no difference that the U.S. Tax Court's judgment was reached by agreement of the parties. In other words, the Fifth Circuit concluded that the fact that the judgment resolving the debtor's income tax liability was reached by agreement rather than after a hearing on the merits did not mean the judgment

had no *res judicata* effect. *See Teal*, 16 F.3d at 621-22*; United States v. Shanbaum*, 10 F.3d 305, 313-14 (5th Cir. 1994) (holding that an agreed judgment is entitled to full *res judicata* effect).

Again, the facts of *Teal* differ from those in the matter at hand. The Review Board and Rhonda Fugitt never reached a settlement of her tax liability, and, therefore, no judgment was entered that would be subject to *res judicata*.

### (3.)  *El Tropicano*

In the third case relied upon by MDOR, the debtor sought a redetermination of its liability for property taxes assessed by county and city tax assessors against a hotel, its primary asset, prior to the commencement of its chapter 11 bankruptcy case. *El Tropicano*, 128 B.R. at 155. The debtor had protested the valuation of the hotel for the tax years 1987, 1988, and 1989, but had not sought judicial review of the appraised values within the appeal deadlines provided under state law. The tax assessors asserted that the bankruptcy court lacked jurisdiction because the valuations were "contested before and adjudicated by a judicial or administrative tribunal" within the meaning of § 505. In support of their assertion, the tax assessors pointed out that the valuations of the hotel for the 1987 and 1988 tax years were reached after negotiated settlements and the valuation of the hotel for the 1989 tax year was decided by a review board after a contested hearing (although no judicial review was sought or obtained by the debtor).

Examining the standard used in other kinds of litigation, the bankruptcy court found that the settlement agreements negotiated with the debtor for the 1987 and 1988 tax years counted as "adjudications" for purposes of § 505(a)(2)(A). As to the 1989 tax year, the bankruptcy court also concluded that the debtor's protest before the appraisal review board, during which the debtor had an opportunity to argue its version of the facts, constituted an adjudication that precluded it from relitigating its tax liability. The bankruptcy court in *El Tropicano* noted:

> Congress appears to have used a broad expression in order to encompass the variety of mechanisms for tax adjudication which might be found throughout the nation. . . . The generic language of [§ 505(a)(2)(A)] reflects an apparent congressional intent to defer to the tax adjudication mechanism of a given state, whatever it might be, so long as it results in *an* adjudication.

*El Tropicano*, 128 B.R. at 160.

*El Tropicano* is consistent with *Teal* in that judgments based on settlement were deemed in both cases to constitute adjudications; *El Tropicana* is also consistent with *Trans State* in that that judgments entered after administrative proceedings were deemed to constitute adjudications. Those circumstances are not present here.

### b.    Analysis

*Trans State*, *Teal*, and *El Tropicano* share a fact that is conspicuously absent from the present Adversary—a final judgment having *res judicata* effect.  In the Board Minutes, the Review Board explained that they did not have "the power to amend the assessment against the taxpayer" and that it had "no jurisdiction over the appeal."  Despite questioning the Debtors at the Review Board Hearing and allowing them to present evidence, the Review Board made no determination regarding the validity or amount of the Assessment.  It follows, then, that there was no actual adjudication within the meaning of § 505(a)(2)(A).

The MDOR asserts that the Assessment was unsuccessfully contested and resolved by the Review Board.  BLACK'S LAW DICTIONARY defines "adjudication" as: "1. the legal process of resolving a dispute; the process of judicially deciding a case. 2. judgment."  BLACK'S LAW DICTIONARY 50 (10th ed. 2014).  Here, the only judgment made by a Mississippi administrative agency was the untimeliness of the Debtors' appeal.  There was no adjudication of the tax question and no intent by the Review Board to render such an adjudication, as reflected in the Board Minutes where the Review Board wrote that it lacked "the power to amend the assessment

against the taxpayer." The MDOR confuses the Review Board's decision on jurisdiction with a decision on the merits. No judgment was entered on the merits or after resolution of the issue by agreement by the parties.

Under traditional principles of *res judicata*, a dismissal for lack of jurisdiction does not preclude a subsequent action in another forum. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963); *see also In re A.H. Robins Co.*, 126 B.R. 227, 229 (Bankr. E.D. Va. 1991) (finding that "[a]n issue decided by default judgment has not been 'contested before and adjudicated by' a tribunal so as to deprive the Court of jurisdiction under § 505(a)(2)"). Likewise § 505, which rests on *res judicata* principles, does not come into play when an appeal is dismissed for lack of jurisdiction. This view is supported by Rule 7041(b) of the Federal Rules of Bankruptcy Procedure which expressly provides, in pertinent part, that an involuntary dismissal for lack of jurisdiction does not operate as an adjudication on the merits. FED. R. BANKR. P. 7041(b). Because a dismissal for lack of jurisdiction is not considered a dismissal on the merits, it has no *res judicata* effect. *Jefferson v. Cmty. Bank (In re Jefferson)*, 447 B.R. 645, 650-51 (Bankr. S.D. Miss. 2012) (finding that dismissal of adversary on jurisdictional grounds was not a final judgment on the merits); *see also Mann v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 488 F.2d 75, 76 (5th Cir. 1973) (a dismissal for lack of jurisdiction renders a court powerless to render a decision on the merits).

In an analogous case, the Ninth Circuit Court of Appeals in *Central Valley AG Enterprises v. United States*, 531 F.3d 750 (9th Cir. 2008), reversed a district court's decision holding that § 505(a)(2)(A) deprived it of subject matter jurisdiction. *Cent. Valley*, 531 F.3d at 757. The district court rested its conclusion on these facts: the debtor, through its partners in a partnership formed with its wholly-owned subsidiary, filed protests resulting in a conference

with the Appeals Office of the I.R.S.; after a conference failed to yield a settlement, the I.R.S. Appeals Office issued a Notice of Final Partnership Administrative Adjustment ("FPAA") disallowing certain tax shelter losses reported on the partnership's tax return pursuant to the procedures set forth in the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), 26 U.S.C. §§ 6221-6234; the debtor, as an "indirect partner," had an opportunity to file a petition for readjustment contesting the disallowance of the reported losses in the FPAA but did not do so before expiration of the TEFRA readjustment period; and, thus, the FPAA became final. *Id.*

Addressing the interplay between the policies underlying tax and bankruptcy law, the Ninth Circuit found that "[t]he district court erred in concluding that the mere opportunity for judicial review under TEFRA is sufficient to satisfy [§ 505(a)(2)(A)] and that it is immaterial whether or not a party chooses not to avail itself of that opportunity by filing a petition for readjustment in Tax Court." *Id.* at 758. Simply stated, the Ninth Circuit found that § 505(a) does not preclude a bankruptcy proceeding in the absence of an *actual* contest and adjudication.

Additionally, the Ninth Circuit found that it was immaterial that the debtors had filed protests with the I.R.S., participated in a conference with the I.R.S. Appeals Office, and received an FPAA. *Id.* The Ninth Circuit noted that such "conferences are materially different than the proceedings that were determined by the Fifth Circuit to satisfy § 505(a)(2)(A) in [*Trans State*]." *Id.* In contrast to *Trans State*, "[these conferences do not provide] for taxpayer discovery or for witnesses to be subpoenaed, testimony under oath is not taken (although affidavits may be required), and there are no provisions requiring that the proceedings be recorded or that any particular evidentiary rules be followed." *Id.* at 758. Therefore, the Ninth Circuit concluded that § 505(a)(2)(A) did not deprive the district court of subject matter jurisdiction to hear the debtor's

objection to the government's tax claim since that issue had never been "contested before and adjudicated by the Tax Court." *Id.* at 759.

*Central Valley* supports the proposition that this Court has authority to examine the Assessment and determine the validity of the sales taxes. For the limitation in § 505(a)(2)(A) to apply, an *actual* adjudication is required. *Id.* at 758. Because the Debtor's opposition to the Assessment was never considered, subject matter jurisdiction exists under § 505 to determine the Debtors' tax liability irrespective of the Debtors' failure to pursue a timely appeal under Mississippi tax law. Here, the BTA refused to dismiss the Debtors' appeal as untimely and remanded the matter to the Review Board for a hearing. Although the Review Board held a hearing, it granted the relief the BTA had previously denied the MDOR: the Review Board dismissed the appeal for lack of jurisdiction. The Review Board's dismissal was inconsistent with the BTA's remand order. Under these factual circumstances where the Review Board twice refused to consider the merits of the Debtors' appeal, § 505(a)(1) confers jurisdiction on this Court to redetermine the Debtors' tax liability without regard to the length of time between the date of the Assessment and the filing of the Adversary.

Although the Court finds that the broad grant of jurisdiction under § 505(a)(1) extends to the Debtors' tax liability, the statute does not reach all tax disputes. Under § 505(a)(2)(C), a bankruptcy court may not redetermine *ad valorem* taxes if the appeal time for contesting or redetermining the amount under state law has expired.[16] The lack of a similar constraint on the jurisdiction of a bankruptcy court to redetermine sales taxes supports the Court's conclusion that its redetermination of the Assessment falls within the purview of § 505(a)(1) under the facts presented here.

---

[16] *See infra* note 20.

Finally, the Court notes that § 505(a)(1) represents a balance of the conflicting interests of debtors, creditors, and taxing authorities. To achieve that balance, § 505(a)(1) protects a debtor from being bound by a tax liability that was never actually adjudicated. *See Mantz v. Calif. State Bd. of Equalization (In re Mantz)*, 343 F.3d 1207, 1211 (9th Cir. 2003). The protection afforded a debtor by § 505(a)(1) is especially important given the nondischargeability of some taxes under § 523(a)(1).

## 2.      Abstention

Having determined that subject matter jurisdiction exists, the Court next considers whether it should decline to exercise its jurisdiction under § 505(a).[17] The language at issue is that a bankruptcy court "*may* determine" the amount or legality of a tax subject to certain conditions. 11 U.S.C. § 505(a) (emphasis added).

The Debtors argue that the Court lacks any discretion to abstain from considering the tax dispute because "it is an abecedarian principal [sic][18] that if there is no viable alternative forum then there is no court of competent jurisdiction for the Federal Court to yield or defer to." (Debtors Br. at 3). In other words, the Debtors contend that the use of "may" in § 505(a) does

---

[17] Although MDOR sometimes uses the term "abstention," it does so in the context of asking the Court to decline to exercise jurisdiction under § 505(a) and does not cite 28 U.S.C. § 1334(c)(1).

[18] The Court did not know the meaning of "abecedarian" and had to look up the definition in the dictionary. "Abecedarian" means "basic." *See* OXFORD ENGLISH DICTIONARY (3d ed. 2011). The Court, however, did know that "principal" means the person in charge and "principle" means a rule or belief. *See id.*

not vest the Court with abstention powers beyond those set forth in 28 U.S.C. § 1334(c)(1).[19]

In support of their preclusive-abstention argument, the Debtors rely on *Hospitality Ventures/Lavista v. Heartwood 11, L.L.C. (In re Hospitality Ventures/Lavista)*, 314 B.R. 843, 850 (Bankr. N.D. Ga. 2004).[20]   There, the chapter 11 debtor sought a redetermination of *ad valorem* taxes assessed against its hotel.   The debtor failed to appeal the assessment in a timely manner under state law.   The bankruptcy court rejected motions for abstention:

> Because it is too late to challenge the taxes under state law, the debtor has no remedy if the Court abstains.   Thus, abstention here is preclusive:   It will effectively deny the remedy the debtor seeks under federal bankruptcy law. The Court concludes that [28 U.S.C.] § 1334(c)(1) permits abstention only if there is

---

[19] 28 U.S.C. § 1334(c)(1) provides:

Except with respect to a case under chapter 15 of title 11, nothing in [28 U.S.C. § 1334] prevents a [bankruptcy court] in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

*Id.*

[20] The underlying bankruptcy case in *Hospitality Ventures* was commenced before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23. The pre-BAPCPA version of § 505(a) conferred jurisdiction on a bankruptcy court to determine the amount of *any* unpaid tax liability, provided the tax had not actually been determined by a judicial or administrative tribunal of competent jurisdiction before the commencement of the bankruptcy case.   The BAPCPA amended § 505(a)(2) by adding § 505(a)(2)(C), which precludes a bankruptcy court from determining a debtor's *ad valorem* tax liability "if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired." 11 U.S.C. § 505(a)(2)(C); *see* Carl M. Jenks, *The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005: Summary of Tax Provisions*, 79 AM. BANKR. L.J. 893, 896 (2005) ("Under [BAPCPA], if the liability for an *ad valorem* tax has become fixed and the debtor's time to contest it outside of bankruptcy court has expired, the debtor may not contest the liability in bankruptcy.").   Because the tax dispute in *Hospitality Ventures* involved *ad valorem* taxes, § 505(a)(2)(C) likely would have resulted in the dismissal of the adversary proceeding, assuming that the debtor would have initiated such a proceeding in light of the amendment.   The Debtors rely on *Hospitality Ventures* for its exhaustive discussion of abstention under § 505(a), which BAPCPA did not alter with respect to taxes other than *ad valorem* taxes.

an alternative forum and that § 505(a) does not permit a bankruptcy court to decline to exercise jurisdiction other than under [28 U.S.C.] § 1334(c)(1).

*Id.* at 845-46.

The MDOR maintains that an adjudication by this Court of the Debtors' tax liability "would serve no legitimate bankruptcy purpose and [would] be contrary to the purpose[] behind [§] 505." (MDOR Br. at 18). The MDOR points out that the underlying bankruptcy Case is a no-asset chapter 7 case in which the unsecured debt is *de minimis* and the secured debt consists only of a mortgage. Thus, the only potential beneficiaries of a redetermination of the tax liabilities of the Debtors are the Debtors themselves, to the detriment of the MDOR. Under such circumstances, according to the MDOR, discretionary abstention is appropriate under § 505(a). The MDOR relies on *Cain v. United States (In re Cain)*, 142 B.R. 785 (Bankr. W.D. Tex. 1992), in which the bankruptcy court expressed its concern that absent abstention, "every taxpayer could ignore [taxing authority statutory] requirements for disputing tax liability, and then after the fact attempt to obtain a judicial determination in bankruptcy court." *Id.* at 789.

The Court finds that the use of "may" in § 505(a) denotes that the Court's power to determine the Debtors' tax liability is not limited in the manner suggested either by the Debtors or by the MDOR. The Court rejects the Debtors' interpretation of § 505(a) that a bankruptcy court must hear a tax dispute when no alternative forum is available. Although the availability of another forum can be an important factor, it is not alone determinative of whether the Court should exercise its authority.

The Court also rejects MDOR's interpretation that abstention under § 505(a) is mandatory in no-asset chapter 7 cases. In *Luongo*, a case cited by the MDOR for a different reason, the Fifth Circuit encouraged an interpretation of § 505 that defers to all of the goals in the Bankruptcy Code, not just the goal of protecting creditors' interests. *Luongo*, 259 F.3d at 330.

Courts "should consider the impact of abstention not only on the general administration of the estate, but also on the debtor." *Id.* (citing *Smith v. Internal Revenue Serv. (In re Smith)*, 122 B.R. 130, 133-34 (Bankr. M.D. Fla. 1990)). This is because a bankruptcy court's responsibility in administering the estate is, in some part, to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh." *Id.* (quoting *Local Loan v. Hunt*, 292 U.S. 234, 244 (1934)).

Having rejected the parties' narrow views of § 505(a), the Court adopts a more holistic approach to the abstention question. To that end, the Court considers the following six (6) factors that other bankruptcy courts have applied in deciding whether to hear a tax dispute: (1) the complexity of the tax issues; (2) the need to administer the bankruptcy estate in an orderly and efficient manner; (3) the burden on the bankruptcy court's docket; (4) the length of time required for trial and decision; (5) the asset and liability structure of the debtor; and (6) the prejudice to the taxing authority. *Luongo*, 259 F.3d at 330. Applying these factors to the Adversary, the Court finds that they weigh against abstention.

This Court is often called upon to apply state law to resolve bankruptcy issues, and a determination of sales taxes under Mississippi law is not a terribly complex subject. In that same vein, the Court finds that redetermination of the Debtors' tax liability would not be burdensome to the Court or overly time consuming.

Also, the dischargeability of the Debtors' tax liability is a predominate bankruptcy issue in the Adversary. "When bankruptcy issues are at the core of a dispute, it would be absurd for a bankruptcy court to abstain from deciding those matters over which it has particular expertise." *Id.* at 331. In issues such as this where "bankruptcy issues predominate and the Code's objectives will potentially be impaired," the Court should not abstain. *Id.* at 332. Because the

Court has jurisdiction over the tax dispute and there is no other forum to resolve it, the Court finds that abstention is unwarranted. *See In re Cable & Wireless USA, Inc.*, 331 B.R. 568, 575 (Bankr. D. Del. 2005) (concluding that § 505(a) does not authorize discretionary abstention other than what is allowed under 28 U.S.C. § 1334(c)(1)).

### 3.       Dischargeability

Even if the Court lacked jurisdiction to determine the valuation and validity of the Assessment, the Court clearly has jurisdiction to determine whether the sales taxes are dischargeable. Yet the MDOR seeks dismissal of the Adversary in its entirety. The Motion to Dismiss and the MDOR Brief concern subject matter jurisdiction to determine the validity and amount of the tax claim. MDOR argues that the Debtors' tax debt is nondischargeable as a matter of law. That pre-trial argument is more appropriately addressed in the context of a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, as made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. The present procedural posture of the Motion to Dismiss precludes the Court from reaching the merits of the Debtors' dischargeability claim.

## B.       Motion to Strike

In their Motion to Strike, the Debtors ask the Court to strike the MDOR's Summary Judgment Brief from the docket because the MDOR failed to file a corresponding motion for summary judgment. Apparently, MDOR's counsel docketed the Summary Judgment Brief as a "Motion for Summary Judgment" and simply forgot to file a separate motion after "an accidental deletion of the network switch configuration left users with no connectivity to resources on the file servers or the internet on [the MDOR] network." (Decl. of Bynum, Adv. Dkt. 42-1).

The Debtors also criticize the MDOR for using "otherwise dispositive procedural tools without any attempt at even the most basic of research to determine their applicability to the facts

of this case." (Mot. to Strike at 3).  However, the "most basic of research" would have led the Debtors to M<small>ISS</small>. B<small>ANKR</small>. L. R. 9013-1(a) ("Local Rule 9013-1(a)"), which requires that each motion "specify the rules and statutory provisions upon which it is predicated." (*Id.*).  The Motion to Strike is devoid of any law or procedural rule.  By failing to comply with Rule 9013-1(a), the Debtors commit the same procedural deficiency they accuse the MDOR of committing.  In spite of the absence of legal authority in the Motion to Strike, the Court construes it as a request under Rule 12(f) of the Federal Rules of Civil Procedure ("Rule 12(f)"), made applicable to bankruptcy cases by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.[21]

Rule 12(f) provides a court, on its own or on a motion by either party, with the ability to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Federal courts disfavor Rule 12(f) motions because striking a pleading is both "a drastic remedy" and is "often sought by the movant simply as a dilatory tactic." *Adams Cnty. Water Ass'n v. City of Natchez,* No. 5:10CV199-DCB-RHW, 2012 WL 463740, at *1 (S.D. Miss. Feb. 13, 2012).  Consequently, Rule 12(f) motions "should be sparingly used." *United States v. Coney,* 689 F.3d 365, 379 (5th Cir. 2012) (internal quotation & citation omitted).  To succeed under Rule 12(f), the movant must meet the "high bar" of showing: (1) that the challenged allegations are "so unrelated to [the party's] claims as to be unworthy of any consideration;" and (2) that their presence would be prejudicial to the moving party.  *Adams Cnty. Water Ass'n*, 2012 WL 463740, at *2 (internal citation & quotation omitted). As discussed below, the Motion to Strike fails for two reasons.

---

[21] The Court assumes that the Debtors' Rule 12(f) argument is based in part on M<small>ISS</small>. B<small>ANKR</small>. L.R. 7056-1(3)(A), which requires a motion for summary judgment to be accompanied by a memorandum brief.

First, a motion to strike is not the appropriate procedural mechanism to attack the sufficiency of another party's summary judgment filings.  Rather, a Rule 12(f) motion may only be used to attack actual "pleadings" as defined by Rule 7(a) of the Federal Rules of Civil Procedure ("Rule 7(a)"), made applicable to adversary proceedings by Rule 7007(a) of the Federal Rules of Bankruptcy Procedure.  Examples of "pleadings" include a complaint, cross-claim, counterclaim, and answer.  FED. R. CIV. P. 7(a).  Neither a motion for summary judgment nor a memorandum brief is included in Rule 7(a)'s list of pleadings.  *See id.*

In *Coney,* 689 F.3d at 380, the Fifth Circuit affirmed the district court's denial of a Rule 12(f) motion to strike summary judgment filings.  Of significance here, the Fifth Circuit questioned the appropriateness of the motion to strike in light of Rule 7(a).  *Id.* at 379 n.5. ("Rule 12(f) motions only may be directed towards pleadings as defined by Rule 7(a); thus motions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f).") (internal citation & quotation omitted); *see also Groden v. Allen,* No. 3:03-CV-1685, 2009 WL 1437834, at *3 (N.D. Tex. May 22, 2009) ("Plaintiff does not seek to strike a pleading within the meaning of Rule 12(f), and the motion sought to be stricken — even if construed as a pleading — has a definite relation to this case. Rule 12(f) provides no basis for striking the motion.").

Second, even if the Summary Judgment Brief is construed as a "pleading,"[22] the Motion to Strike still fails because it does not meet the "high bar" of showing both unrelatedness to the tax and dischargeability issues in the Adversary and prejudice to the Debtors.  *Adams Cnty.*

---

[22] The Court assumes, without deciding, that the Debtors' arguments meet the standards set forth by Rule 12(f). Under Rule 12(f), a claim is only "redundant when it essentially repeats another claim in the same complaint." 2 MOORE'S FEDERAL PRACTICE–CIVIL § 12.37(3) (2014) (internal citation omitted). "An allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action." *Id.* Finally, material is 'scandalous' only when it "unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Id.*

*Water Ass'n,* 2012 WL 463740, at *2. The Proposed Summary Judgment Brief  is not "so unrelated to [their] claims as to be unworthy of any consideration." *Id.*  Further, the MDOR's procedural mistake has not prejudiced the Debtors' ability to try this case. The MDOR's Summary Judgment Brief was filed on June 2, 2014 and contains the same arguments and authority that the MDOR presented in the Proposed Summary Judgment Motion, which it filed eighteen (18) days later as an exhibit to its Motion to Amend.  As to the timeliness issue, the Court's Scheduling Order has halted the deadlines for the Debtors to respond to the Summary Judgment Brief until after the resolution of the Motion to Dismiss.  Ultimately, the Court does not find that the summary judgment filings "are inappropriate, will result in wasted time and money, or will confuse the court." *Id.* (internal quotation marks omitted).

## C.    Motion to Amend

The MDOR filed its Motion to Amend its Summary Judgment Brief pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure (the "Rule 15(a)(2)"), made applicable to bankruptcy cases by Rule 7015 of the Federal Rules of Bankruptcy Procedure.  However, similar to Rule 12(f), Rule 15(a)(2) applies only to "pleadings" as defined by Rule 7(a). In contrast to pleadings, "[m]otions to dismiss or for summary judgment are not responsive pleadings within the meaning of Rule 15(a);" therefore, "amendments may be made as of right notwithstanding such motions."   10 COLLIER ON BANKRUPTCY ¶ 7015.04 (16th ed. 2014) (internal citations omitted).

The inapplicability of Rule 15(a) does not mean that the MDOR is relieved of the obligation to comply with the Scheduling Order issued by this Court.  *See* FED. R. CIV. P. 56(b) ("Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.").

Therefore, a motion to modify the Scheduling Order pursuant to Rule 16(b) of the Federal Rules of Civil Procedure would be more appropriate in this situation.

Under Rule 16(b), the moving party must show "good cause" for why it was not able to "reasonably meet the scheduling deadlines" issued by the Court "despite its exercise of diligence." *Ciena Corp. v. Nortel Networks Inc.,* 233 F.R.D. 493, 494 (E.D. Tex. 2006) (citing *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.,* 315 F.3d 533, 535 (5th Cir. 2003)); *Chancellor v. Pottsgrove Sch. Dist.,* 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007) ("[I]f the party was not diligent, there is no 'good cause' for modifying the scheduling order and allowing the party to file a motion to amend its pleading."). The Court has broad discretion to allow such a modification and considers the following four (4) factors: "(1) the explanation for the party's failure to meet the deadline, (2) the importance of what the Court is excluding, (3) the potential prejudice if the Court allows the thing that would be excluded, and (4) the availability of a continuance to cure such prejudice." *Ciena Corp.,* 233 F.R.D. at 494 (citing *S&W Enters.,* 315 F.3d at 536).

The MDOR has sufficiently explained the cause of its failure to meet the dispositive motion deadline:[23] computer/network problems at its main office. Counsel for the MDOR acted with due diligence to rectify her mistake by contacting the Mississippi Department of Information Technology Services which was unable to correct the problem that same day. Subsequently, the MDOR began scanning the documents from her home computer and in the process mistakenly overlooked the Summary Judgment Motion.

---

[23] Following the time-honored tradition of waiting until the last day to file motions has its risks. Except for the absence of any prejudice to the Debtors, the Court easily could have reached a different conclusion.

A motion for summary judgment "has the potential to dispose of the case without the time and expense of a trial," and, therefore, "an amendment to the scheduling order with respect to the dispositive motion deadline is important." *Branch Banking & Trust Co. v. Wells,* No. 3:10-CV-2238, 2013 WL 3367266, at *4 (N.D. Tex. July 5, 2013). Extending the deadline to allow the MDOR to include the exhibits filed on the morning of June 3, 2014, as well as the Motion for Summary Judgment filed as an exhibit to the Motion to Amend on June 20, 2014, will not prejudice the Debtors. The Proposed Summary Judgment Motion that MDOR seeks to include does not differ in substance from the Summary Judgment Brief submitted on June 2, 2014. Additionally, the Court entered the Order Extending Deadline to File Response and Memorandum Brief to Brief in Support of Motion for Summary Judgment (the "Order Extending Deadlines") (Adv. Dkt. 39) granting the Debtors an extension of the deadline to respond to the Summary Judgment Brief until resolution of the Motion to Strike, if necessary. *Branch Banking & Trust Co.,* 2013 WL 3367266, at *4 ("[A]ny potential prejudice that may result to Defendant by the amendment [to the scheduling order] can be easily remedied by allowing him the opportunity to file a response to Plaintiff's motion."). Ultimately, the MDOR has shown good cause for amendment of the Scheduling Order.

## Conclusion

For the above and foregoing reasons, the Court concludes that the Motion to Dismiss should be denied. The Court finds that it has jurisdiction to determine the valuation and validity of the Assessment and abstention is not warranted. The Court further finds that the Motion to Strike should be denied on the ground that it is procedurally incorrect and otherwise does not meet the Rule 12(f) standards for striking a pleading. Finally, the Court concludes that the

Motion to Amend should be granted to allow the MDOR to file the Proposed Summary Judgment Motion after the dispositive motion deadline.

IT IS, THEREFORE, ORDERED that the Motion to Dismiss hereby is denied.

IT IS FURTHER ORDERED that the Motion to Strike hereby is denied.

IT IS FURTHER ORDERED that the Motion to Amend hereby is granted. The MDOR shall file the Proposed Summary Judgment Motion within seven (7) days of the date of this Opinion. Consistent with the Order Extending Deadlines, the Debtors shall file a response and memorandum brief within twenty-one (21) days of service of the Proposed Summary Judgment Motion. The MDOR may file a reply within fourteen (14) days after the response is served.

##END OF ORDER##